UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY RAY SMITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:20-cv-01350-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 24)** |

I. **Introduction**

Plaintiff Billy Ray Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 24–25. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

II. **Factual and Procedural Background[2]**

On May 24, 2017 and July 31, 2017, respectively, Plaintiff applied for disability insurance benefits and supplemental security income alleging disability as of August 20, 2013 due to diabetes and neuropathy. AR 162, 335, 342. The Commissioner denied the applications initially on November 6, 2017 and on reconsideration on February 1, 2018. AR 219; 229. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on November 5, 2019.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 11.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

AR 36–102.  On November 18, 2019, the ALJ issued a decision denying Plaintiff's application.  AR 15–30.  The Appeals Council denied review on July 21, 2020.  AR 1–6.  On September 23, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. <u>The ALJ's Decision</u>

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the day following his prior hearing determination on February 22, 2017. AR 18. At step two the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, diabetic neuropathy of bilateral hands and feet, obesity, and major depressive disorder. AR 18. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: coronary artery disease and hypertension. AR 18. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 19.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with a limitation to sitting 6 hours, standing/walking 8 hours, limitations on postural activities, no exposure to unprotected heights or dangerous machinery, a limitation to frequent handling and fingering, and a limitation to simple, routine, repetitive tasks. AR 21–28. At step four the ALJ

concluded that, considering his RFC, Plaintiff could not perform his past relevant work as a loader/unloader in combination with a tank truck driver, semi-truck driver, or tow truck driver, all of which were performed at the heavy exertional level. AR 28.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy at the light exertional level, namely: marker, router clerk, and storage rental clerk.  AR 29.   Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since his prior hearing decision date of February 22, 2017.  AR 29.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred in rejecting the opinions of LCSW Sampson; and, 2) that the ALJ improperly rejected his testimony.

### A.     LCSW's Opinion

#### 1.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

### 2. **Analysis**

On October 8, 2019, Plaintiff's treating provider, Licensed Clinical Social Worker (LCSW) Sampson, completed a mental capacity assessment of Plaintiff. AR 673–75. Under the category of understanding, remembering and applying information, LCSW Sampson opined that Plaintiff was moderately limited in his ability to sequence multi-step activities, but otherwise had no limitations. AR 673. Under the category of concentration, persistence or maintaining pace, LCSW Sampson opined that Plaintiff had moderate, marked or extreme limitations with respect to 5 out of 6 abilities. AR 674. Under the category of adapting or managing one's self, LCSW Sampson

opined that Plaintiff had one marked limitation and one extreme limitation. AR 674. Finally, under the category of interaction with others, LCSW Sampson opined that Plaintiff was moderately limited as to all 5 abilities. AR 675. LCSW Sampson completed an additional mental capacity assessment dated October 9, 2019 (one day later) in which she opined similarly.

The ALJ discounted these opinions for several reasons. First, the ALJ noted that the opinion "is a checkbox form, with no accompanying narration to provide supporting clinical findings or to explain in detail the reasoning for the assessed opinions." AR 27. An opinion cannot be discounted for being in checkbox form provided it is adequately supported. *Garrison v. Colvin*, 759 F.3d 995, 1014 n. 17 (9th Cir. 2014) (check-box opinion cannot be rejected where consistent with the provider's treatment notes); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes.").

Here, LCSW Sampson did provide an explanation for her opinion, but the explanation did not identify clinical findings in support. Under clinical findings in support, LCSW identified depression and anxiety numerous times. Those are diagnoses, not clinical findings in support of the identified limitations. Indeed, before the questionnaire begins the form asks the provider to list the patient's diagnoses which LCSW Sampson did, namely major depressive disorder and generalized anxiety disorder. Repeating the same diagnoses again under the clinical findings section does not transform the diagnoses into clinical findings. Nor is it sufficient to state that the alleged limitations, such as concentration limitations, are attributable to Plaintiff's depression and anxiety because "poor concentration is a symptom of both depression and anxiety." AR 673. Such reasoning is circular and still begs the question of what clinical findings support the alleged limitations in concentration. LCSW Sampson also noted that Plaintiff reported symptoms such as insomnia due to leg pain, tendencies toward social isolation, uncontrolled worries and feeling

6

"clouded." Reciting Plaintiff's self-reported symptoms is also not a clinical finding. In short, LCSW Sampson recited what Plaintiff told her, and recited what she understands to be symptoms of Plaintiff's diagnoses in general. She made no indication of what she objectively observed during her visits.

As LCSW Sampson was well aware, clinical findings in the context of a mental status examination include detailed observations such as appearance (e, g. grooming, hygiene), speech pattern (e.g. pressured, tangential, circumstantial), thought content (goal directed, disorganized), fund of knowledge, and concentration (serial 7s, 3s).[3] Indeed, LCSW Sampson did make such clinical findings in her treatment notes but did not reference any of them in her opinion.

The ALJ explained that LCSW Sampson's treatment notes noted full orientation, organized speech, and coherent process. AR 27 (citing exhibit B12F/4). A review of the exhibit cited by the ALJ reveals a selective interpretation thereof by the ALJ. In addition to noting full orientation, organized speech and coherent thought process, the very same record notes additional mental status examination results suggestive of limitations including: 1) poor concentration, 2) irritable, anxious and depressed mood, 3) problems with immediate and recent memory, and 4) cognitive deficits. AR 684. The ALJ did not acknowledge the same. Thus, to the extent the ALJ found LCSW's opinion was contradicted by her own treatment notes, that is not entirely the case as the ALJ selectively cited from those treatment notes. In that regard, the ALJ erred.

The ALJ's error was harmless however because the ALJ cited numerous other stable mental status findings in the record which did not support the LCSW's opinion. AR 27 (citing Ex. B4F/5; B6/F2, 5, 8; B7F/3, 5, 12, 16, 29, 32, 35, 28, 41; B9F/8). Plaintiff takes issue with the ALJ's reliance on these examinations, noting that the appointments were not mental health appointments but rather were appointments for physical conditions such as an earache, diabetes, a flu shot, low

---

[3] *See* Mental Status Exam Guidelines, https://www.dshs.wa.gov/sites/default/files/forms/pdf/13-865add.pdf

back pain, and testicular pain. Br. at 19. Plaintiff contends the "[f]indings were 'stable' as no provider ever made findings; the absence of evidence is not evidence of absence." Br. at 19. Plaintiff's contention is not all together accurate. Although these were not mental health appointments, his providers still made findings regarding his mental status, which is far from uncommon. While these examination notes did not reflect comprehensive mental status examinations, they all addressed his mental status to some extent and nearly uniformly noted one or more of the following findings: full orientation; appropriate mood and affect; normal insight and judgment; appropriate affect and demeaner; normal speech pattern; grossly normal memory; no self-reported feelings of depression, hopelessness, insomnia, or having little interest or pleasure in doing things. *See*, e.g., AR 569, 575, 586, 589, 592, 603, 605, 612, 616, 629, 632, 635, 638, 641, 670. In short, as the ALJ found, LCSW's opinion as to Plaintiff's moderate, marked and extreme mental limitations were neither supported by or consistent with these medical records.

Plaintiff also takes issue with the ALJ's observation that LCSW Sampson "only saw the claimant 3 times by video . . ." AR 27. As Plaintiff emphasizes, telehealth treatment has significant benefits particularly for individuals like Plaintiff who has difficulty using his feet and lives in a small town of 3,500 people without substantial access to in-person medical care. However, the above-quoted statement from the ALJ's opinion does not necessarily indicate that the ALJ was expressing a negative view toward telehealth as opposed to underscoring the limited number of visits with LCSW. Even assuming the ALJ's reference to "video" visits was intended pejoratively, any error was harmless. Although the extent of the treatment relationship and frequency of examinations are relevant factors to be considered when evaluating an opinion (*See* 20 C.F.R. § 404.1520c(c)), the ALJ is not required to articulate how he considered the nature and extent of Plaintiff's treating relationship with LCSW Sampson. Rather, the regulations require that the ALJ articulate how the factors of supportability and consistency were considered, and he did so as

detailed above.

Next, Plaintiff takes issue with the ALJ's observation that, according to LCSW's own treatment notes, Plaintiff demonstrated full orientation, organized speech and coherent thought process. Plaintiff correctly observes that the ALJ's discussion of those treatment notes was selective. The ALJ ignored other findings therein supportive of limitations, such as poor concentration, anxious and depressed mood, blunted affect, and dysphoric mood. *See* 684, 689. Nevertheless, LCSW's treatment notes were not emblematic of Plaintiff's mental status more generally, as his mental status examinations were consistently normal as noted in more than a dozen other examinations in the record cited by the ALJ and described above. In such instances, courts are to defer to the ALJ's conclusion. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted) (noting that if the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.).

Plaintiff also takes issue with the ALJ's conclusion that his activities of daily living were inconsistent with LCSW's opinion, including attending one football game and occasionally doing jujitsu at his sister's dojo. To Plaintiff's credit, the cited activities of daily living do not necessarily foreclose LCSW Sampson's identified limitations, and may even be generally consistent with the notion that Plaintiff suffered marked to extreme limitations in several categories of mental functioning. Nevertheless, the error was harmless as the ALJ evaluated the required regulatory factors of supportability and consistency, and cited ample medical evidence in support of her conclusion that LCSW Sampson's opinion was not supported by or consistent with the mental status examinations in the record. *See* 20 C.F.R. § 404.1520c(c)(2).

Plaintiff further disputes the ALJ's observation that he was not prescribed medication. Plaintiff underscores that licensed clinical social workers are not permitted to prescribe medications. Plaintiff also underscores that he was in the early stages of his treatment, that he had

been referred to a psychiatrist, and that he was waiting to be seen at the time of his hearing. Thus, Plaintiff contends it was counterintuitive to discount LCSW's Sampson opinion based on lack of medication prescriptions considering LCSW Sampson could not have prescribed medication and referred him to someone who could.

Plaintiff's argument here misses the point. Importantly, the ALJ identified lack of prescribed medications as a basis for concluding that Plaintiff's mental limitations were not as severe as LCSW identified. That conclusion was supported, at least based on the evidence available to the ALJ at the time the ALJ rendered the decision. The fact that Plaintiff was scheduled to see a psychiatrist who might have ultimately prescribed medication, is immaterial. These potential records, although conceivably important for consideration in a subsequent application for benefits, were not before the ALJ here. At the time of the ALJ's decision, Plaintiff's depression had indeed been treated conservatively. He had three visits with an LCSW, no visits with a psychiatrist, and no prescribed medication. Where a claimant receives only conservative treatment for an impairment, that is an appropriate reason to reject an opinion the impairment is disabling. *Jackson v. Colvin*, No. 2:15-CV-06123 (VEB), 2016 WL 5947225, at *5 (C.D. Cal. Oct. 12, 2016), (citing *Johnson v. Shalala*, 60 F.3d 1428,1434 (9th Cir. 1995)).

Finally, Plaintiff contends in the alternative that the RFC was generally unsupported because there is no mental health opinion in the record other than that of LCSW Sampson, and because new and material evidence establishes a worsening of his existing physical condition. The state agency reviewers applied *Chavez* to the prior ALJ's determination from February 21, 2017 for a light exertional RFC with no accompanying severe psychiatric impairments due to the absence of new and material evidence suggestive of a worsening of his physical or mental condition. *See* AR 170, 197 (citing *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) (presumption of continuing non-disability applies absent change in circumstances, namely new and material

evidence indicative of greater disability)).  The ALJ in the instant case, on the other hand, chose not to give res judicata effect to the prior ALJ decision, finding new and material evidence concerning diabetes mellitus, moderate to severe peripheral neuropathy, and records indicative of a severe mental impairment, namely major depressive disorder.  AR 26.

As to his depression, Plaintiff contends the RFC is unsupported because he was not receiving treatment for the condition at the time of the agency doctors' review at the initial and reconsideration levels, and that the ALJ therefore impermissibly played doctor in formulating his own mental RFC out of whole cloth rather than deferring to the only mental health opinion of record, namely that of LCSW Sampson.

Plaintiff's argument is unavailing.  Notwithstanding the fact that Plaintiff had not yet begun mental health treatment at the time of the agency doctors' review, the record is not devoid of any mental health opinion other than that of LCSW Sampson.  Rather, given that Plaintiff claimed disability in part due to his depression, the state agency psychologists Goldberg and Caruso-Radin did indeed render an opinion on his mental functioning and found that Plaintiff had no mental impairment.  AR 166, 194.  Notably, their notes indicate that there was "no psych evidence in file" and therefore no medically determinable impairment was established.  AR 167

The fact that Plaintiff subsequently began treatment with LCSW Sampson was the very basis for the ALJ's conclusion that Plaintiff *did* have a severe mental impairment (namely major depressive disorder), and that a corresponding limitation to simple and routine tasks was warranted.  AR 27.  The fact that the ALJ's determination was more favorable to Plaintiff than the agency psychologists' determinations, but still resulted in a finding of non-disability, does not render the ALJ's determination unsupported by any medical opinion.

Nor is Plaintiff correct that the ALJ was unqualified to interpret the notes from his three video visits with LCSW Sampson, compare those to the other mental status findings in the record,

11

and reach a conclusion. The records in question were not particularly dense nor were they unsusceptible to a lay understanding, as would be the case with complex imaging findings or laboratory testing results. *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

Rather, the records in question reflected uncomplicated mental status examinations by a licensed clinical social worker. Although these records demonstrated some mental deficiencies, the ALJ reasonably concluded that the weight of the medical evidence demonstrated stable mental status findings, as explained above.

As to his physical condition, Plaintiff likewise contends the ALJ erred in formulating the RFC based on his independent review of records not reviewed by the state agency reviewers who only reviewed two medical records from December of 2017. Br. at 21–22. The ALJ independently interpreted later dated records, noting: 1) a November 2018 examination containing a single mention of polyneuropathy; 2) an associated increased Cymbalta dosage to 90 mg daily; 3) that by March 2019 the record noted improved diabetes control but continued lower extremity polyneuropathy with moderate to severe parasthetic symptoms; and 4) records from July 2019

suggesting Plaintiff was walking around stores and picking up mail despite decreased effectiveness from Lyrica in controlling his polyneuropathy.  AR 24.

Similar to the mental health records, these records were not particularly voluminous, dense, or unsusceptible to a lay understanding.  Rather, they largely involved the severity of his polyneuropathy, its responsiveness to Lyrica and Cymbalta, and its associated impact on his activities.  These were documents related to the same diabetic neuropathic condition referenced in the records already reviewed by the state agency doctors.  The ALJ specifically noted that those physicians did not have access to the records which were generated during the two-year period between reconsideration and the claimant's hearing, with the more recent records demonstrating moderate to severe polyneuropathy.  In light of those later dated records, the ALJ only accorded partial weight to the state agency physicians' opinions and included additional restrictions they did not include, namely a limitation to standing and walking 4 out of 8 hours and no more than frequent performance of manipulative activities.  AR 26–27 (citing AR 168–70).

In sum, the ALJ did not impermissibly play doctor, nor did he independently formulate an RFC out of whole cloth based on a lay interpretation of complex medical records.  Rather, he reviewed records concerning a pre-existing condition (diabetic neuropathy) of which the state agency physicians were already aware and made modifications to those physicians' RFCs in light of a worsening of the underlying condition.

Plaintiff offers no substantive discussion of the records pre-dating and post-dating the agency physicians' review.  He makes no meaningful attempt to juxtapose the content of the two periods of records, to explain why the later dated records were unsusceptible to a lay understanding, or what additional restrictions those records might have supported. Rather, Plaintiff asserts with no elaboration that the agency physicians only reviewed two records from December 2017, that subsequent records supported additional restrictions, and that "[c]onsidering the spirited debate

between hearing counsel and the ALJ, it is quite uncertain to what extent Plaintiff is limited by the neuropathy in his hands." Br. at 21-22 (emphasis added).

Plaintiff's burden on appeal requires more than raising the possibility that a more restrictive RFC was potentially warranted. His burden on appeal requires at least some attempt at explaining what he believes was novel about the records post-dating the agency doctors' review as it relates to his use of his hands and why those records might have supported a more restrictive RFC than the ALJ assessed, namely a limitation to no more than frequent manipulations. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted). *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.") (citation omitted); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

The mental portion of the RFC was supported by substantial evidence, namely the numerous treatments notes the ALJ cited which noted stable mental status, which outweighed the sparser records from LCSW Sampson noting otherwise, and which justified the rejection of her opinion. The physical portion of the RFC was supported by substantial evidence as well, namely the state agency reviewers' opinions opining Plaintiff was capable of performing light work with few limitations to which the ALJ added restrictions in light of records demonstrating worsening diabetic neuropathy.

**B.** **<u>Plaintiff's Subjective Symptomology</u>**

1. **Applicable Law**

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms;

---

[4] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 23. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Plaintiff offers minimal discussion of this issue, largely reincorporated by reference his first argument given the ALJ's overlapping reasoning. Plaintiff contends that the ALJ's reasons for discounting his testimony "are largely based on findings already discussed at length above, and as such, are not supported by substantial evidence." Br. at 23. For the same reasons discussed above, the Court disagrees.

As for the specific testimony Plaintiff underscores and the ALJ's associated reasoning for rejecting the same, Plaintiff takes issue with the daily activities the ALJ cited as a basis for discounting his testimony. Plaintiff contends that watching TV, using his computer for facebook, and playing 10 minutes of smartphone games are largely vegetative activities which are consistent with his testimony that he has severe pain in his hands 90 percent of the time. Plaintiff cites *Langdon* in which the court noted that it "is unclear . . . how Facebook or computer games would relate to any paid work activity other than involving computers. These instead appear to be nothing more than leisurely pastimes." *Langdon v. Berryhill*, No. 3:16-CV-05871-TLF, 2017 WL 3188616, at *7 (W.D. Wash. July 26, 2017).

Plaintiff's argument again misses the mark. The claimant in *Langdon* suffered from alcoholic pancreatitis, degenerative disc disease, and cognitive disorders. The ALJ in that case referenced the claimant's "ability to play memory games on the computer and using facebook" as

evidence of his ability to concentrate. The court disagreed. *Id.* Here, by contrast, Plaintiff suffers diabetic neuropathy. The ALJ here noted that "his testimony indicate(s) he is able to engage in a number of activities *that require grasping, handling, fingering, and feeling* such as fishing, cooking, driving a car, using a computer, and playing games on the smart phone." AR 24 (emphasis added). Unlike in *Langdon*, the identified testimony is quite relevant to the capacity at issue, namely Plaintiff's capacity to use his hands despite his diabetic neuropathy.

Plaintiff contends that playing 10 minutes of smart phone games is still consistent with his testimony that he suffers "severe pain in my hands like 90 percent of the time." Br. at 24, citing AR 55. That may be true. However, as quoted above, the ALJ identified numerous other activities that Plaintiff reported being able to do with his hands. Granted, none of these activities establish that Plaintiff could use his hands for manipulative activities for 2/3 of an 8-hour day in a competitive work setting, as the ALJ found he could. But the cited activities are still inconsistent with the notion that he suffers severe pain in his hands 90 percent of the time. Accordingly, the ALJ reasonably rejected that testimony. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [*which*] *did not suggest Valentine could return to his old job,"* but *"did suggest that Valentine's later claims about the severity of his limitations were exaggerated.*") (emphasis added).

As to his ability to stand and walk, Plaintiff also takes issue with the ALJ's rejection of his testimony as inconsistent with his daily activities of walking around stores and picking up mail. Plaintiff underscores that he also testified that these activities were very difficult to do because of his pain; he did not testify that he is physically unable to walk. Br. at 25 (citing AR 69). Plaintiff fails to articulate what restrictions would have logically followed had the ALJ accepted his testimony as true. The RFC is not the most one can do while remaining pain free. Rather, it is the

17

most one can do despite one's limitations.  *See* 20 C.F.R. § 404.1545(a)(1).

Moreover, the ALJ did not completely reject the notion that Plaintiff's diabetic neuropathy caused lower extremity pain ,nor did the ALJ find that he could stand and walk without limitation. Indeed, the ALJ found that the medical records postdating the agency physicians' review established worsening diabetic neuropathy in his lower extremities and that additional limitations were warranted including a limitation to standing and walking no more than 4 hours a day.  AR 24. Plaintiff fails to explain how the required inference to be drawn from his testimony about his leg pain was that he was incapable of standing and walking 4 hours a day.  Accordingly, his argument falls short.  *See Juniel v. Saul,* No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff "could not have public contact" and limited interaction with co-workers.").

To the extent Plaintiff testified to the existence of limitations greater than those included in the RFC, the ALJ identified clear and convincing reasoning for rejecting the same, namely Plaintiff's reported activities of daily living.

### VII.   **Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Billy Ray Smith.

IT IS SO ORDERED.

Dated:     **January 28, 2022**                         **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE